# STATE OF WEST VIRGINIA

## SUPREME COURT OF APPEALS

**FILED**

August 1, 2016
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**JAMES ALLPORT,**
**Claimant Below, Petitioner**

**vs.)    No. 15-0732** (BOR Appeal No. 2050060)
(Claim No. 2012015611)

**NITRO ELECTRIC,**
**Employer Below, Respondent**

## MEMORANDUM DECISION

Petitioner James Allport, by John H. Skaggs, his attorney, appeals the decision of the West Virginia Workers' Compensation Board of Review. Nitro Electric, by Patricia E. McEnteer, its attorney, filed a timely response.

This appeal arises from the Board of Review's Final Order dated July 1, 2015, in which the Board affirmed a November 26, 2014, Order of the Workers' Compensation Office of Judges. In its Order, the Office of Judges affirmed the claims administrator's November 17, 2011, decision to reject the claim. The Court has carefully reviewed the records, written arguments, and appendices contained in the briefs, and the case is mature for consideration.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision is appropriate under Rule 21 of the Rules of Appellate Procedure.

Mr. Allport, a journeyman and electrician for Nitro Electric, asserted that he was injured as a result of being exposed to dimethyl sulfide on September 26, 2011. Nitro Electric introduced Mr. Allport's previous treatment records. From December of 2007 through January of 2008, records from Charleston Area Medical Center indicated Mr. Allport was hospitalized with complaints of shortness of breath and leg swelling. He was diagnosed with obstructive sleep apnea, shortness of breath, hypertension, and asthma/chronic obstructive pulmonary disease. Records authored by Oscar Gosien, M.D., from December 12, 2010, indicate he was seen for

1

recurrent sinus stuffiness and pressure, cough, congestion, and fever. He also had chronic obstructive pulmonary disease, which exacerbated his shortness of breath.

Mr. Allport introduced newspaper articles from Charleston Daily Mail for the dates of September 27, 2011, and October 10, 2011. The articles reported that sulfur dioxide vapor had caused workers to fall ill. The first article reported three workers fell ill and the second reported that four workers became ill. The article noted that three employees who were conducting maintenance work in the dimethyl sulfide unit began to experience discomfort that included throat irritation and a hoarse voice. One worker was hospitalized as a result.

On October 24, 2011, Mr. Allport was treated at Plateau Medical Center for shortness of breath. An x-ray of the chest revealed cardiomegaly and bilateral interstitial infiltrates with small left pleural effusion, likely representing pulmonary edema. The clinical impression was acute bacterial pneumonia bibasilar-respiratory failure. He was then transferred to Charleston Area Medical Center. When he was discharged from Charleston Area Medical Center, the records showed that the chief complaint was respiratory distress. The records further indicated that he had a history of upper respiratory tract infections as well as shortness of breath and coughing. The discharge diagnoses were acute respiratory failure, bilateral pneumonia, sepsis, lower gastrointestinal bleed, hypertension, diabetes, sleep apnea, deconditioning, dysphagia, and hyperlipidemia. Mr. Allport was referred to Tom Takubo, M.D., for evaluation. Dr. Takubo opined that his symptoms were related to his exposure to dimethyl sulfide.

The claims administrator denied Mr. Allport's application for benefits on November 17, 2011. The claims administrator determined that Mr. Allport's work area was not in close enough proximity to the spill to have resulted in any exposure. Furthermore, the claims administrator determined the inference that his symptoms could not have been cause by the spill was further reinforced by the fact that his symptoms did not manifest until a month after the alleged exposure.

Mr. Allport was deposed on November 12, 2012. He testified that he mainly worked along the main road down to the tank. He stated that he worked the entire day when the alleged line break occurred. He communicated that he did not return to work the next day because he thought he was suffering from a lung infection. Mr. Allport stated that he was informed by his brother-in-law that workers from another company had been exposed to chemicals in a spill. Mr. Allport testified that he returned to work on September 28, 2011, and September 29, 2011, but reported to his physician on September 30, 2011, because he was coughing and had a hoarse voice. He explained that he continued to work until October 12, 2011, when he was laid off. He testified that after he was laid off, he experienced a collapse and was hospitalized for respiratory distress. He relayed that he was treated in the intensive care unit and underwent surgery to repair bleeding in his colon. Mr. Allport identified Alan Saunders as a co-worker on the alleged date of exposure.

Alan Saunders testified on March 21, 2013, that he was Mr. Allport's brother-in-law and had been living with him for the prior three years. Like Mr. Allport, he also installed communication and fire alarm systems around the plant. Mr. Saunders advised that Mr. Allport

did not have problems completing his job prior to the injury. Mr. Allport had been up all night sick and coughing on September 26, 2011, and could not make it to work the following day. He said Mr. Allport had difficulty working on September 28, 2011. Thereafter, Mr. Saunders felt that Mr. Allport was never the same because he could not perform his job very well. He stated that he and Mr. Allport were supposed to work on another job and Mr. Allport could not because of his health. He advised that he saw Mr. Allport's symptoms progressively worsen over the next two weeks. He testified that eventually Mr. Allport's wife became concerned and took him in for treatment. Kimberly Held, a co-worker, testified on March 21, 2013, that she told Mr. Allport what happened with the spill and that he called off the next day from work. She noted that it was very unlike Mr. Allport to call off work for illness.

On April 25, 2013, Robbie Milam, a project manager, testified that he was working with Mr. Allport on the day in question and none of his workers complained of any symptoms. They were originally supposed to install a new fire alarm and hotline system but could not do so because of the grand opening of the Kureha plant. As a result, they gathered at the break trailer until new orders were issued. A map was provided to show where the new work site was located. They worked at the new site until they left work at five p.m. The day after, Mr. Saunders informed him that a leak had occurred at the dimethyl sulfide tank area. Mr. Saunders further stated that Mr. Allport was not feeling well and would not be at work that day. Mr. Milam testified that he observed Mr. Allport cough pretty hard in the month prior and Mr. Allport had mentioned to him that he had a long-standing cold he could not get over. After Mr. Allport returned, Mr. Milam did not notice any more symptoms.

Shawn Abdalla, a co-worker, testified on May 21, 2013, that he was working with Mr. Allport on the day in question. He confirmed Mr. Milam's testimony that they could not work in the original area they planned so they were sent back to the break trailer. Mr. Abdalla opined that the break trailer was approximately one hundred yards from the dimethyl sulfide unit. When they returned to work, Mr. Allport was working towards the river side of the plant, which is around six hundred feet from the dimethyl sulfide unit. Mr. Abdalla testified that he never saw or heard Mr. Allport exhibit any symptoms of being exposed to dimethyl sulfide. He did, however, notice that Mr. Allport had difficulty breathing for a long time prior to the alleged exposure. On August 14, 2013, Donald McGraw, M.D., performed a record review and opined that there was no factual evidence to support chemical exposure in this case. He noted that exposure to dimethyl sulfide would cause symptoms within hours, not days or weeks.

The Office of Judges determined that Mr. Allport did not sustain an injury in the course of and as a result of his employment. The Office of Judges found that there was not enough evidence to establish a causal connection between the dimethyl sulfide leak and Mr. Allport's symptoms. The Office of Judges reasoned that it was highly unlikely that Mr. Allport was exposed to any dimethyl sulfide because the testimony of Mr. Milam and Mr. Abdalla establish that he was never in close proximity to the spill. Next, the Office of Judges found that Mr. Allport did not show any signs of a chemical burn injury to the lungs when he finally did present for treatment. The Office of Judges also found that the distance in time between the alleged exposure and his need for medical treatment was approximately one month. The Office of Judges reasoned that fact was significant because if the chemical caused the symptoms, it would have

manifested at a much more rapid rate. The Office of Judges noted that when Mr. Allport was hospitalized it was due to bacterial pneumonia, which is unrelated to chemical exposure. Finally, the Office of Judges found that Dr. McGraw's opinion was deserving of more weight than Dr. Takubo's because Dr. McGraw was made aware of Mr. Allport's long-standing, pre-existing pulmonary issues such as chronic obstructive pulmonary disease, asthma, and a significant smoking history. The Board of Review adopted the findings and conclusions of the Office of Judges and affirmed its Order.

After review, we agree with the consistent decisions of the Office of Judges and Board of Review. The evidence of record supports the conclusion that there was no exposure to harmful chemicals. Furthermore the evidence of record supports the conclusion that even if there was incidental exposure, there is no causal connection between the exposure and Mr. Allport's symptoms. Because the evidence of record supports the conclusion that there was no exposure to dimethyl sulfide or a causal connection between any exposure and his symptoms, the Office of Judges and Board of Review were not in error for rejecting the claim.

For the foregoing reasons, we find that the decision of the Board of Review is not in clear violation of any constitutional or statutory provision, nor is it clearly the result of erroneous conclusions of law, nor is it based upon a material misstatement or mischaracterization of the evidentiary record. Therefore, the decision of the Board of Review is affirmed.

Affirmed.

**ISSUED: August 1, 2016**

**CONCURRED IN BY:**
Chief Justice Menis E. Ketchum
Justice Robin J. Davis
Justice Margaret L. Workman
Justice Allen H. Loughry II

**DISSENTING:**
Justice Brent D. Benjamin

4